Argued and submitted March 7, reassigned August 14, reversed and remanded
August 20, 1985

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## ROBIN KEITH CAMPBELL,
*Petitioner on Review.*

(CC 10-81-02891, 10-81-02892; CA A26455; SC S30758)

705 P2d 694

David E. Groom, Deputy Public Defender, Salem argued the cause for petitioner on review. With him on the petition was Gary D. Babcock, Public Defender, Salem.

Virginia Linder, Assistant Solicitor General, Salem, argued the cause for respondent on review. With her on the brief was Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Marc D. Blackman, Portland, filed a brief *amicus curiae* on behalf of the ACLU Foundation of Oregon, Inc. With him on the brief was Ransom, Blackman & Simson, Portland.

Michael C. Sullivan, Madras, Michael D. Schrunk, Portland, and Dianne L. Middle, Salem, filed a brief *amicus curiae* on behalf of the Oregon District Attorneys Association.

Stephen J. Williams, Deputy Public Defender, Salem, filed a brief *amicus curiae* on behalf of the Oregon Criminal Defense Lawyers Association.

JONES, J.

Campbell, J., filed a dissenting opinion joined by Lent and Linde, JJ.

## JONES, J.

This is a review of a criminal conviction. The issue is whether hearsay testimony by the mother of a three-year-old declarant who is the alleged victim of sexual abuse is admissible in evidence. We hold that under the facts of this case part of the testimony was admissible and part not if the defendant's confrontation rights are satisfied.

Defendant was convicted after a non-jury trial of two counts of Sodomy in the First Degree[1] based upon a written confession of the defendant and the testimony of the mother of the victim relating to the court the child's statements made later in the same day that the abuse allegedly occurred.

The mother testified that defendant was the babysitter for her children on March 20, 1981. Defendant and the witness's (the mother's) daughter were alone from 8:30 a.m. until noon. At that time, the witness's son returned from school. Defendant and the two children were alone until 4:10 p.m., at which time mother returned home from work. At approximately 5 p.m., after defendant had left, mother and daughter had a conversation which mother related to the court:

"A.   I asked [my daughter] 'Well, what did you do today?' * * * 'Did you have fun today' or - that type of prequestion. And she said, 'Robin [defendant's first name] takes my clothes off every day.'

"Q.   All right.

"A.   And when I got my breath I said, 'Well, that's a silly

---

[1] ORS 163.405 provides:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

* * * * *

(b)  The victim is under 12 years of age; * * *

* * * * *

"(2) Sodomy in the first degree is a Class A felony."

ORS 163.305(1) provides:

" 'Deviate sexual intercourse' means sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another."

thing to do.' And I says, 'Why does he do that?' And she says - oh, no. No. She says, 'He swings me around and stuff.' And I said, 'Oh!'

"And then she dropped her head a little bit and 'He licks my tee-tee.' "[2]

This testimony was admitted under OEC 803(24), the residual exception to the hearsay rule, over objection by defendant. The defendant's taped confession had been previously received. The relevant portions of the defendant's confession are as follows:

"[Police Officer]:   Okay, will you make a voluntary statement regarding the incidents?

"[Defendant]:   Yes.

"* * * * *

"[Police Officer]:   Okay. Would you tell me where this occurred at.

"[Defendant]:   In the recliner chair in the front room.

"[Police Officer]:   Okay, do you know the address? Of the house?

"[Defendant]:   650 River Road.

"[Police Officer]:   Okay, and can you tell me in your own words what your capacity at that house was at the time?

"* * * * *

"[Defendant]:   Babysitting.

"* * * * *

"[Police Officer]:   Okay. Can you tell me in your own words on Monday, March 2nd, what occurred and at approximately what time.

"[Defendant]:   Well about 11:00 a.m., Bethany got on my lap and, uh, she says, 'I have a tee-tee' as she refers to it and she pulled down her pants and said 'see' and then I said, 'Let me see' and then, uh, pulled her pants off of her and . . . .

"* * * * *

"[Defendant]:   And then I, uh, proceeded to lick her tee-tee.

---

[2] The daughter had been taught during toilet training to use the word "tee-tee" for vagina or vaginal area.

"[Police Officer]:   Okay. Which, okay now you are referring to her vaginal area?

"[Defendant]:   As she calls it.

"* * * * *

"[Police Officer]:   Okay, explain to me how you did that.

"[Defendant]:   Well, I had my hands around her waist and I pulled her up to my face.

"[Police Officer]:   Okay. Okay, for approximately how long did you do that to her?

"[Defendant]:   Approximately two or three minutes.

"[Police Officer]:   Okay. Then to Monday, March the 9th, would you explain that to me?

"[Defendant]:   Well, the same as the other time and all, all of them happened at eleven o'clock in the morning and we was watching TV at the time.

"* * * * *

"[Defendant]: And then I grabbed her by the waist and pulled her up to my face.

"[Police Officer]:   Okay and what did you do at that point?

"[Defendant]:   Licked her vaginal area.

"[Police Officer]:   Okay, for approximately how long?

"[Defendant]:   For two to three minutes.

"[Police Officer]:   Okay. Referring to Monday, March 16th, will you explain that one to me please?

"[Defendant]:   Okay. She got onto my lap again, and uh, she uh, said the same thing as she did before, 'I've got a tee-tee, how come you haven't', and she pulled down her pants and said, 'See, what I have' and I said 'let me see' and then I pulled her pants off of her and her panties and pulled her to my face and proceeded to lick her tee-tee.

"[Police Officer]:   For approximately how long?

"[Defendant]:   Two to three minutes.

"[Police Officer]:   Okay, Okay, Friday, March the 20th, would you explain that one for me?

"[Defendant]:   Okay, it was, uh, uh, the same thing. She got up on my lap again and she said, 'I've got a tee-tee, how come you haven't got one', she pulled down her pants real quick and pulls them back up and says, 'See' and I pulled it

down and says, 'Let me see' and grabbed her by the waist and proceeded to lick her vaginal area."

The Court of Appeals affirmed without opinion.

■ The mother's testimony in this case was hearsay because it was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). Thus the testimony was not admissible unless it qualified as one of the exceptions to the hearsay rule set forth in OEC 803 or 804.

■ The trial judge admitted the testimony under OEC 803(24), which provides:

"The following are not excluded by [OEC 802], even though the declarant is available as a witness:

\* \* \* \* \*

(24)(a)   A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

(A)   The statement is relevant;

(B)   The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(C)   The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence.

(b)   A statement may not be admitted under this subsection unless the proponent of it makes known to the adverse party the intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing, or as soon as practicable after it becomes apparent that such statement is probative of the issues at hand, to provide the adverse party with a fair opportunity to prepare to meet it."

The Legislative Commentary to OEC 803(24) clarifies the purpose and scope of the residual hearsay exception in Oregon. It approves the holding in *Dallas County v. Commercial Union Assurance Co.,* 286 F2d 388 (5th Cir 1961), admitting a copy of a local newspaper published over 50 years earlier containing an unsigned article describing a fire in the Dallas County Courthouse while it was under construction. The article was trustworthy because it was inconceivable that

a small town journalist would report a fire in the local courthouse if none in fact had occurred. The commentary disapproves the holding in *Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 503 P2d 482 (1972), admitting a statement of the deceased purchasing agent of defendant that it was the agent's intention to purchase logs unconditionally from plaintiff. In *Timber Access,* this court deemed the statement trustworthy because the declarant was in a position to know the facts and ordinarily would not make a statement against his interest unless it was truthful. 263 Or at 519-20.

The Legislative Commentary to OEC 803(24) states:

> "Because exceptional cases like *Dallas County* may arise in the future, the Legislative Assembly adopted this residual hearsay exception in Rule 803 and a similar one in Rule 804 [(3)(f)].[3] It intends that these provisions be used very rarely, and only in situations where application of the hearsay rule and its other exceptions would result in injustice. These rules are not a broad grant of authority to trial judges to admit hearsay statements."

The passage above reserved to the legislature the authority to fashion new exceptions to the hearsay rule and expressly circumscribed the authority of the judicial system to create categories of hearsay which will be admissible under the residual exception. The authority of trial courts is limited to admitting hearsay very rarely in exceptional cases where the particular circumstances of the declarant and the out-of-court statement are demonstrably trustworthy.[4]

---

[3] OEC 804(3)(f) is substantively identical to OEC 803(24) with two exceptions: first, it is applicable only "if the declarant is unavailable as a witness," OEC 804(3); *see* OEC 804(1); and, second, the statement must be "offered as evidence of a material fact," OEC 804(3)(f)(A), rather than be "relevant" as is required in OEC 803(24)(a)(A). The commentary to OEC 803(24) applies to OEC 804(3)(f). Legislative Commentary to OEC 804(3)(f).

[4] For purposes of analogy, we note that FRE 803(24) and FRE 804(b)(5) are equivalent to OEC 803(24) and OEC 804(3)(f), respectively. The Senate committee which approved this federal legislation stated:

> "It is intended that the residual hearsay exception will be used very rarely and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care,

■     Although the parties and *amici* cite substantial authority to allow or disallow this type of testimony in child sex abuse cases under the residual sections of the code, counsel miss the main reason this testimony cannot be admissible under the residual hearsay exception. That reason is that the legislature made a conscious decision to restrict unexcited hearsay declarations of sexual misconduct by enacting OEC 803(18a), which reads as follows:

> "Rule 803.   Hearsay exception: availability of declarant immaterial. The following are not excluded by Rule 802, even though the declarant is available as a witness:
>
> \* \* \* \* \*
>
> (18a)   Complaint of sexual misconduct. A complaint of sexual misconduct made by the prosecuting witness after the commission of the alleged offense. Such evidence must be confined to the fact that the complaint was made."

Because the legislature specifically restricted hearsay evidence of sexual misconduct, the trial judge erred in admitting the hearsay testimony under the "catch-all" exception, OEC 803(24).

The erroneous ruling does not end our inquiry because part of the out-of-court declaration was, as a matter of evidence law, admissible under OEC 803(18a). We now examine that rule and its historical background.

OEC 803 commences with the words: "Hearsay exception; availability of declarant immaterial." The commentary explains that OEC 803 "is a list of 23 specific exceptions and one general exception to the hearsay rule,

---

reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule." Notes of Committee on the Judiciary, Senate Report No. 93-1277, Note to Paragraph (24), *reprinted in* 28 USCA § 803, Historical Note (1984).

To like effect is *United States v. Mathis,* 559 F2d 294 (5th Cir 1977), which cites a portion of the above quote. The Court explained the historical legal preference for live testimony with an opportunity for cross-examination over hearsay testimony regarding an out-of-court statement to better assess the reliability of evidence. The court concluded that "tight reins must be held to insure that [FRE 803(24)] does not emasculate our well developed body of law and the notions underlying our evidentiary rules." *Mathis,* 559 F2d at 299. A well-respected commentator on evidentiary matters has written that the attitude of Congress on FRE 803(24) "was clearly one of conservatism toward resorting to the exception, and the courts generally have announced respect for that position." McCormick on Evidence § 324.1 (3rd ed 1984). The same could be said of the attitude of the Legislative Assembly in Oregon.

which apply whether or not the declarant is available as a witness," and that "Rule 803 proceeds upon the theory that a hearsay statement may possess such circumstantial guaranties of trustworthiness that the declarant need not be produced at the trial even though the declarant may be available." However, OEC 803(18a) refers to a complaint by the *prosecuting witness* after the commission of the alleged offense." (Emphasis added.)

■■ The preamble to OEC 803 and the text of 803(18a) appear to be in conflict. The preamble says the availability of the declarant is immaterial, yet the rule refers to a prosecuting witness. The term "prosecuting witness" is not defined in the evidence code. In this case the prosecution and the defendant stipulated that the three-year-old alleged victim of sexual abuse was incompetent to testify. Did this stipulation eliminate her status as the prosecuting witness? We think not. We interpret the statute to be referring to the victim of a sexual assault whose availability to testify, according to the preamble to OEC 803, is immaterial. In any event, we conclude that to satisfy the confrontation rights of the defendant the prosecution must produce the child in court for the trial judge to conduct a competency hearing and in that sense the child will be presented as a "prosecuting witness" whether she eventually is allowed to testify or not.

The legislative history reveals that the term "prosecuting witness" as used in OEC 803(18a) first was suggested by a staff member of Legislative Counsel in making a recommendation to the Oregon Evidence Commission at its meeting on January 13, 1977. That staff member recommended that the existing Oregon law pertaining to complaints of rape be enacted. There was no mention that such complaints should be restricted to witnesses who actually testified in the trial. We have traced the origin of the term "prosecuting witness" in rape and sexual assault cases under Oregon law. We believe the language "prosecuting witness" is an outgrowth of early rape and sexual assault cases which referred to the victim of sexual assault as the "prosecutrix." We address these cases in chronological order.

Starting with the case of *State of Oregon v. Tom,* 8 Or 177 (1879), the court was concerned with objections to evidence of the declarations of the victim, a child who was

referred to by the court as "the prosecutrix, a child five years of age." 8 Or at 178. The court stated:

> "It is a rule that the declarations of the prosecutrix in the case of rape, made immediately after the commission of the crime, may be given in evidence to corroborate her testimony on the trial, and it may also be proved that she made complaint, but the particulars of the complaint made can not be admitted in evidence as to the truth of her statement. * * *"

The court continued:

> "* * * If the rape be charged to have been committed on an infant, her declarations of the circumstances can not now be proved further than that she made complaint. * * *" 8 Or at 180.

The court in *Tom* specified two grounds for admission of the complaint — (1) to corroborate the victim's testimony, and (2) to prove she made complaint independent of corroboration — but did not state any rationale for the rule.

In *State v. Sargent,* 32 Or 110, 112-13, 49 P 889 (1897), a case which involved a sexual assault on an eight-year-old girl, this court stated that the admission of the recent complaint of a sex act charged is justified to demonstrate

> "* * * that the prosecutrix made recent complaint upon the ground that it is the natural instinct of an outraged female to make immediate disclosure thereof to a near relative or confidential friend; and, inasmuch as her failure to do so would tend to discredit her as a witness, the prosecution is permitted to anticipate such a claim by affirmative proof that complaint was made. So it is that evidence of the fact that she made such complaint, as well as her manner and appearance when made, is admitted as corroborative of her testimony touching the crime charged * * *."

In *State v. Ogden,* 39 Or 195, 204, 65 P 449 (1901), the court justified the admission of a recent complaint of sexual assault stating that "[t]he complaint was a circumstance tending to corroborate [the adult victim's] testimony." The alleged victim of the rape is referred to as the "prosecutrix" throughout the opinion.

In 1914, in the case of *State v. Whitman,* 72 Or 415, 143 P 1121 (1914), where the victim was under the age of

consent, the court stated that the complaint of rape is admissible but not the name of the person committing the rape. The court reiterated the rationale for the rule as follows:

> "* * * When a girl or a woman is ravished or assaulted with an intent to commit rape upon her, and at the trial of the party accused thereof she appears as witness against him, it is material to prove, if she is above the age of legal consent, that she made complaint of the outrage within a reasonable time after receiving it. The testimony of persons to whom the complaint was made is admissible as original evidence, in order to corroborate the prosecutrix and to rebut any inference that she consented to the outrage. * * *" 72 Or at 416 (citations omitted).

The court continued:

> "* * * Where, however, as in the case at bar, the girl assaulted is under legal age to yield consent to her degradation, no such inference can arise, and her failure to make complaint is immaterial. 72 Or at 417 (citation omitted).

The court nevertheless concluded that the admission of the evidence that the "prosecutrix" stated that the culprit was her father was harmless error. The court referred to the seven-year-old victim as both the "prosecuting witness" and "prosecutrix." In dissent, Justice Burnett stated that where "the prosecutrix is younger than the age of consent, the reason of the rule fails, and with it the admissibility of the testimony perishes." 72 Or at 420.[5]

The last word from the Oregon Supreme Court on the "complaint of sexual misconduct" exception to the hearsay rule appears in *State v. Haworth,* 143 Or 495, 21 P2d 1091 (1933). This court in *Haworth* departed from the prior

---

[5] Justice Burnett then launched off into the now widely discarded canard, *see State v. Bashaw,* 296 Or 50, 672 P2d 48 (1984):

> "Someone has very wisely said in substance of the crime in question that it is easy to charge, hard to prove, and still harder to defend against. It is a matter of common knowledge that men who ordinarily compose juries will not think or act dispassionately on a case of this sort. By far too frequently does the mere charge raise the cry of the mob, 'Crucify him! Crucify him!' Taking advantage of this, it is easy for one having ill feeling against the accused to work up a case involving a little girl and arouse the indignation natural in the breast of everyone who has a heart above a beast. The influence of a possibly designing mother over such a child is so great tending to a fabricated story that the legal rights of the defendant ought to be strictly guarded. * * *" *State v. Whitman,* 72 Or 415, 421, 143 P 1121 (1914).

rationale expressed in *State v. Whitman, supra,* as to declarations by victims under the age of consent. After referring to the 10-year-old victim as both the "prosecuting witness" and the "prosecutrix," the court in *Haworth* stated:

> "When the prosecutrix is under the age of consent, it is not necessary to corroborate her testimony by showing that she made complaint. * * * In a rape case, under the exception to the rule of hearsay, such testimony is admissible, such a complaint being the natural expession of an outraged female." 143 Or at 497.

The court then approved the following quotation:

> " 'In applying this rule it has been held that while the witness should not be permitted to tell the particulars of the complaint, still enough may be given in evidence to show the nature of the complaint, *even though it involves to some extent the particulars thereof,* and that the rule is not violated by evidence showing the time and place where the complaint was made, the circumstances under which it was made, [and] the condition of the victim when making the complaint * * *.' 22 R.C.L. 1214." 143 Or at 497-98 (emphasis added).

In *Haworth,* the court allowed in evidence the complaint of "an act of intercourse [which] occurred at the defendant's home on a night in May, 1931." 143 Or at 496. The court apparently recognized that in revealing the fact of the complaint it is necessary to some extent to include some description of the acts.

■     We conclude from the cases above that the early court decisions referred to the victims of sexual assault as either the "prosecuting witness" or the "prosecutrix" irrespective of age. Further, original rationale expressed by this court for the rule, to corroborate the testimony of adult witnesses or to negate an inference of consent, was abandoned in child victim cases. The Oregon court in *Haworth* felt that even though children under the age of consent need not rebut any inference of consent, the complaint of outrage by the child justified admission without resort to any other rationale for the rule. Apparently the court felt that it would be as natural for a child to complain of sexual assault as an adult, even though the child does not need to negate consent. Although one of the reasons for the rule as expressed by this court would logically require the adult victim to testify in order to have her testimony corroborated by her out-of-court complaint, such

rationale is not applicable in the case of a child victim. Without setting forth any rationale for its decision, our court in its last expression on the subject simply held that in the case of a child, even though there is no consent to negate, in the normal course of events the victim of sexual abuse will tell someone about the assault. It follows that it is unnecessary for a child victim to testify as a predicate or precondition for admission of the child's complaint of sexual misconduct[6] because there is no need for corroboration. This conclusion is buttressed by the fact that the legislature, in placing OEC 803(18a) as an OEC 803 exception, must have decided that the availability, and therefore the testimony of the declarant, was immaterial.

If the authors of the Oregon Evidence Code felt that the declarant must testify at the trial as a precondition for admissibility of the out-of-court statement, they would have placed "complaints of sexual misconduct" under OEC 801(4)(a) which specifically refers to prior statements by *available witnesses.* OEC 801(4)(a) reads:

"(4)  Statements which are not hearsay. A statement is not hearsay if:

(a)  Prior statement by witness. *The declarant testifies at the trial* or hearing *and is subject to cross-examination* concerning the statement, and the statement is

(A)  Inconsistent with the testimony of the witness and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition;

---

[6] Professor Wigmore in his classic treatise on evidence agrees:

"Where the prosecutrix is a child *too young to be a witness,* the statements should nevertheless be receivable;[4] because, although in general a hearsay declarant must not lack the qualifications of an ordinary witness, yet the peculiar nature of the present exception renders this principle substantially inapplicable to children; furthermore, the orthodox common-law limitations as to children's testimonial capacity are inherently unsound and impractical and should not be extended by analogy.

---

"4 [Citing] *Brazier's Case,* [1 East, Pleas of the Crown 443 (1779)], so understood by Parke, B., in R. v. Guttridge, 9 Car. & P. 471 (1840); People v. Marrs, 125 Mich. 376, 84 N.W. 284 (1900); Croomes v. States, 40 Tex. Crim. 672, 51 S.W. 924 (1899), s.c., 53 S.W. 882 (1899); Kenney v. State, 79 S.W. 817 (Tex. Crim. 1904); Hannon v. State, 70 Wis. 448, 36 N.W. 1 (1888)." 6 Wigmore, Evidence 246, § 1761 (Chadbourne rev 1976) (parentheticals omitted).

    (B)   Consistent with the testimony of the witness and is offered to rebut an inconsistent statement or an express or implied charge against the witness of recent fabrication or improper influence or motive; or

    (C)   One of identification of a person made after perceiving the person." (Emphasis added.)

If the legislature intended that the declarant must be available for cross-examination, it would have placed "complaints of sexual misconduct" in a fourth category as OEC 801(4)(a)(D) instead of specifically placing it as an exception under OEC 803 where availability as a witness is immaterial.[7]

■ ■    The commentary to OEC 803(18a) concludes: "The Legislative Assembly intends to retain in full the present Oregon law relating to this exception." The present Oregon law as expressed in the last case covering the subject, *State v. Haworth,* 143 Or at 497-98, allows in enough of the hearsay declaration "to show the nature of the complaint, even though it involves to some extent the particulars thereof." In this case, the mother could testify that "on March 20, 1981, at 5 p.m. at my home while seated in the recliner chair in the front room my three-year-old told me that a person licked her tee-tee." The mother could explain the child's normal use of the expression "tee-tee" without violating the hearsay rule.

■    We now turn to the defendant's contention that there was insufficient evidence to corroborate his confession. As we recently held in *State v. Lerch,* 296 Or 377, 398, 677 P2d 678

---

[7] Professor Michael H. Graham has proposed exactly such an amendment to the Federal Rules of Evidence. His suggested wording reads as follows:

"Rule 801(d)(1)
Statements Which Are Not Hearsay
Prior Statement by Witness

"The following definitions apply under this article:

    (d)  Statements Which Are Not Hearsay. A statement is not hearsay if—

    (1)  Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . *(D) consistent with the declarant's testimony and is one of initial complaint of sexual abuse against the will of the declarant."*

Graham, *The Cry of Rape: The Prompt Complaint Doctrine and the Federal Rules of Evidence,* 19 Willamette L Rev 489, 510 (1983) (proposed language emphasized).

(1984), all that ORS 136.425(1)[8] requires is "some other proof," which means "evidence from which the jury may draw an inference that tends to establish or prove that a crime has been committed." As we previously quoted, the defendant admitted on March 29, 1981, that the child

> "* * * got up on my lap again and she said, 'I've got a tee-tee, how come you haven't got one', she pulled down her pants real quick and pulls them back up and says 'See' and I pulled it down and says, 'Let me see' and grabbed her by the waist and proceeded to lick her vaginal area."

The complaint from a three-year-old that a person "licked her tee-tee" is certainly "some other evidence" sufficient to corroborate the confession of the defendant.

The defendant finally contends that even though the statement by the child may qualify under a hearsay exception and be sufficient to corroborate his confession, the introduction of such testimony violated his right to confrontation under Article I, section 11, of the Oregon Constitution, which provides that a defendant in a criminal prosecution has the right "to meet the witnesses face to face," and under the Sixth Amendment to the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

We must decide state constitutional claims before federal constitutional issues are addressed. This court has repeatedly stated that "all questions of state law be considered and disposed of before reaching a claim that this state's law falls short of a standard imposed by the federal constitution on all states." *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983); *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982); *Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981); *see also* Linde, *"First Things First": Rediscovering the States' Bill of Rights,* 9 U Balt L Rev 379 (1980); Carson, *"Last Things Last": A Methodological Approach to Legal Argument in State Courts,*

---

[8] ORS 136.425(1) provides:

"A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against him when it was made under the influence of fear produced by threats; *nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed.*" (Emphasis added.)

19 Willamette L Rev 641 (1983). In this case, we find that under Article I, section 11, of the Oregon Constitution, the defendant's right "to meet the witnesses face to face" has been violated.

In reaching this result on independent and separate state grounds under Article I, section 11, of the Oregon Constitution, we nevertheless adopt the reasoning of the Supreme Court of the United States in determining what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay declarations to satisfy our state constitutional confrontation clause.

There are no United States Supreme Court cases dealing with confrontation where children's hearsay statements have been introduced against a criminal defendant. However, the relationship between the confrontation clause and the exceptions to the rule against hearsay was addressed by the Supreme Court of the United States in *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). After commenting that a literal reading of the federal confrontation clause would require, on objection, the exclusion of any out-of-court statement made by a declarant not available at trial, the court noted that hearsay statements have been held admissible in evidence in spite of the confrontation clause since *Mattox v. United States,* 156 US 237, 243, 15 S Ct 337, 39 L Ed 409 (1895), which approved the admission of evidence of a dying declaration. In *Ohio v. Roberts, supra,* the United States Supreme Court established a two-part test for determining whether admission of out-of-court statements of a witness who does not testify at trial satisfies the defendant's right to confrontation. First, the declarant must be unavailable and, second, the declarant's out-of-court statements must have "adequate indicia of reliability." Justice Blackman stated with apparent concurrence of the entire court that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." He added that in other cases the evidence "must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 US at 66.

The hearsay exception of "complaint of sexual misconduct" dates back to 1879 in this state since first pronounced in *State of Oregon v. Tom, supra,* 8 Or at 180, in which

this court quoted from Phillipps on Evidence, vol 1, p 149, which was published in 1868. Phillipps traces the exception to the English case of *Regina v. Osborne,* 2 Car & M 624 (1842), which in turn attributes the hearsay exception to Baron Parke writing in *Regina v. Gutteridge,* 9 Car & P 471 (1840).[9] Professor Michael H. Graham reports in an article entitled *The Cry of Rape: The Prompt Complaint Doctrine and the Federal Rules of Evidence,* 19 Willamette L Rev 489, 491-92 (1983):

"Early English common law required a showing that the victim raised the hue and cry—a general alarming of the neighborhood—in cases of violent crimes including sex offenses. Such complaints were viewed as part of the essential corroboration of the case. Because the hue and cry doctrine existed prior to the development of the rule against hearsay, testimony by the sexual abuse victim regarding a prompt complaint and the identity of the assailant was unobjectionable. In addition to the victim, any person who heard the complaint could testify as to what the victim said.

"Centuries later, courts removed the burden of showing the hue and cry for crimes of violence. Admission of the victim's complaint and details of the offense, including identification of the assailant, however, continued as a matter of tradition. With the development of the rule against hearsay, English courts began to hold that the details of the complaint were inadmissible because the witness was not under oath before the trier of fact subject to cross-examination when the complaint was made." (Footnotes omitted.)

Professor John Henry Wigmore wrote earlier that

"In England, the evidential use of those outcries and explanations came down to us in the 1700s as a traditional relic of the old law of hue and cry. Not only in such cases, but in all charges of violence, the accuser must show, to sustain his charge, that he made hue and cry, alarming the neighborhood

---

[9] That same Baron Parke declared the year earlier in *Regina v. Walker,* 2 Moody & Robinson 212, 212 (1839):

"The sense of the thing certainly is, that the jury should, in the first instance, know the nature of the complaint made by the prosecutrix, and all that she then said. But, for reasons which I never could understand, the usage has obtained that the prosecutrix's counsel should only inquire, generally, whether a complaint was made by the prosecutrix of the prisoner's conduct towards her, leaving the counsel of the latter to bring before the jury the particulars of that complaint by cross-examination."

freshly after the occurrence. The application of this principle to rape cases is seen in the following passage:

'H. De Bracton, *De Legibus Angliae*, f. 147 (ca. 1250): When therefore a virgin has been so deflowered and overpowered, against the peace of the lord the king, forthwith and while the act is fresh she ought to repair with hue and cry to the neighboring hills and there display to honest men the injury done to her, the blood and her dress stained with blood, and the tearing of her dress; and so she ought to go to the provost of the hundred and to the sergeant of the lord the king and to the coroners and to the viscount and make her appeal at the first county court.'" 1 Wigmore, Evidence § 1760 (Chadbourne rev 1972).

The declaration clearly falls within an ancient and firmly rooted hearsay exception.[10] Although much has been written about whether out-of-court statements by children concerning sexual misconduct are inherently reliable,[11] we

---

[10] Wigmore comments that the use of evidence of a woman's *complaint of rape*, either as a simple fact or in its detailed statements, to corroborate her testimony on the stand or to rebut the inference from her supposed failure to complain, has been treated by some courts as non-hearsay, being admitted merely as the corroboration of witnesses. He notes:

"* * * However, some courts have believed that such utterances, including their details of statement, could be received on the footing of genuine hearsay assertions, apparently under the present exception. The practical difference would be that the limitations necessary in using such evidence merely in testimonial corroboration would not apply, and the evidence could be more freely received. It remains, therefore, to ascertain how far such a complaint is receivable as a direct exception to the hearsay rule. If it is so receivable, its proper place would seem to be under the present head [as a hearsay exception]." 6 Wigmore, *supra n 6*, at 240.

[11] *See, e.g.*, Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations*, 98 Harv L Rev 806 (1985); McNeil, *The Admissibility of Child Victim Hearsay in Kansas: A Defense Perspective*, 23 Washburn L J 265 (1984); Casenote, *The Final Resting of the "Tender Years" Exception to the Hearsay Rule: People v. Kreiner*, 1 Det C L Rev 117 (1984); Skoler, *New Hearsay Exceptions for a Child's Statement of Sexual Abuse*, 18 J Mar L Rev 1 (1984); Note, *A Tender Years Doctrine for the Juvenile Courts: An Effective Way to Protect the Sexually Abused Child*, 61 J Urb L 249 (1984); Comment, *Confronting Child Victims of Sex Abuse: The Unconstitutionality of the Sexual Abuse Hearsay Exception*, 7 U Puget Sound L Rev 387 (1984); Note, *The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis*, 8 J Juv L 59 (1984); Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Colum L Rev 1745 (1983); *Liberalization in the Admissibilty of Evidence in Child Abuse and Child Molestation Cases*, 7 J Juv Law 205 (1983); Pierron, *K.S.A. 60-460 (dd): the New Kansas Law Regarding the Admissibility of Child-Victim Hearsay Statements*, 52 J Kan Bar Assn 88 (1983); Comment, *Sexual Abuse of Children—Washington's New Hearsay Exception*, 58 Wash L Rev 813 (1983); Stafford, *The Child as a Witness*, 37 Wash L Rev 303 (1962).

need not address that issue because of the historical background of this hearsay exception.

As to the unavailability test, the prosecution in the present case stipulated with defense counsel that the three-year-old child was incompetent to testify as a witness and, therefore, the defendant conceded that the declarant was unavailable. The defendant argues that this stipulation was totally separate from any ruling by the court that the child was unavailable to testify at the trial. Defense counsel claims to have stipulated that the three-year-old witness was not competent because it was to defendant's advantage that she not testify and that "[w]hat defense lawyer would turn down a deal whereby the complainant will not be a witness for the state." Defendant contends that the stipulation from his viewpoint was nothing more than registering his objection to the competency of the witness, that the state conceded incompetency by agreeing to stipulate and, finally, that defendant waived nothing.

■■ We believe that the question of unavailability of a hearsay declarant supposedly due to incompetency should not be left to the advocates in a criminal trial. The prosecution would be relieved from calling the witness and the defense relieved from having the witness appear for trial. If the court is going to admit hearsay statements against a defendant to satisfy the confrontation rights of an accused, the court must ensure the declarant is in fact unavailable. The prosecution has the burden to produce the potential witness for the competency hearing. The defendant has no burden to prove unavailability. As recently stated by the Washington Supreme Court in *State v. Ryan,* 103 Wash 2d 165, 171, 691 P2d 197, 203 (1984):

> "Stipulated incompetency based on an erroneous understanding of statutory incompetency is too uncertain a basis to find unavailability. To excuse production of a witness whose testimony is offered against a criminal defendant through hearsay repetition, a more certain showing is required. *[Ohio v.] Roberts* recognized that the good faith effort incumbent on the State to produce the witness does not require a futile act. 'But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation.' *Roberts,* 448 U.S. at 74, 100 S.Ct. at 2543 [original emphasis]. The unexplained failure

of the State to produce the children exemplifies the fears of one commentator that RCW 9A.44.120 [which allows in evidence hearsay declarations of sexually abused children] may serve as a disincentive to call the child witness. Comment, *Confronting Child Victims of Sex Abuse: The Unconstitutionality of the Sexual Abuse Hearsay Exception,* 7 U. Puget Sound L. Rev. 387, at 398 (1984). Because the State made no apparent effort to produce the children or to excuse their production, the first of the *Roberts* requirements, production or demonstrated unavailability, is not met."

We are aware that many three-year-olds are found to be incompetent after close evaluation by judges conducting trials. On the other hand, many children of tender years make remarkably credible witnesses for either the prosecution or the defense in a criminal trial. Because there is so much variance among children, we believe only the trial judge can make a ruling on competency. We hold, therefore, that before any out-of-court declaration of any available[12] living witness may be offered against a defendant in a criminal trial, the witness must be produced and declared incompetent by the court to satisfy either Article I, section 11, of the Oregon Constitution, or the Sixth Amendment to the United States Constitution. This ruling on competency was not undertaken in this case and, therefore, the case must be reversed and remanded to the trial court for such a determination. If the child is found to be competent, her out-of-court declaration of present complaint of sexual misconduct may be admitted in evidence by her own testimony as well as the testimony of her mother who heard and can repeat the child's words as to the

---

[12] OEC 804(1) provides the definition of "Unavailability as a witness" as follows:

"Definition of unavailability. 'Unavailability as a witness' includes situations in which the declarant:

(a) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of a statement;

(b) Persists in refusing to testify concerning the subject matter of a statement despite an order of the court to do so;

(c) Testifies to a lack of memory of the subject matter of a statement;

(d) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(e) Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of an exception under paragraph (b), (c) or (d) of subsection (3) of this section, the declarant's attendance or testimony) by process or other reasonable means."

complaint. If the child is found to be incompetent, her out-of-court complaint of sexual misconduct is admissible under OEC 803(18a) and is relevant corroboration of the confession of the defendant.

The decision of the Court of Appeals is reversed and the case remanded to the trial court for proceedings not inconsistent with this opinion.

**CAMPBELL, J.,** dissenting.

Just over 20 year ago, Justice O'Connell opened his dissent in *State v. Krogness,* 238 Or 135, 152, 388 P2d 120 (1964), with the observation, "* * * again this court, finding a quite obviously guilty defendant, fashions the law of search and seizure to fit his conviction."

Today the majority in this case has found another quite obviously guilty defendant and has fashioned the law of evidence to hasten his conviction. To reach its result the majority has distorted the meaning of OEC 803(18a) and has completely ignored the "official legislative comment" to that rule. A complete copy of that comment is attached to this dissent marked "Appendix A."

The relevant portions of the rule in question are as follows:

"Rule 803.   The following are not excluded by Rule 802, even though the declarant is available as a witness:

"(18a)   A complaint of sexual misconduct made by the prosecuting witness after the commission of the alleged offense. Such evidence must be confined to the fact that the complaint was made."

Before discussing what the official legislative comment includes, it is interesting to note what it does not include. The majority opinion in this case, by holding that the hearsay testimony of the mother is admissible under OEC 803(18a), opens up a question of whether the defendant has a right to confront the child as a witness under Article I, section 11 of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Surely, if the legislature had intended to allow this type of testimony, the official comment would have discussed the confrontation problem. It did not.

The official legislative comment acknowledges two

chief sources for OEC 803(18a): "This subsection recognizes the holdings in *State v. Waites,* 7 Or App 137, 470 P2d 188 (1971) and the trend all in other jurisdictions" quoting from McCormick on Evidence.

Because *State v. Waites, supra,* is one of the sources of the rule in question, it is important to examine it. It is not mentioned in the majority opinion.

In *State v. Waites, supra,* the defendant was convicted of raping his 14 year-old daughter. She testified in the trial that the rape took place on August 30, 1969, and that the sexual assaults on her by the defendant had taken place regularly over the previous two-year period. Mrs. Bryan, a juvenile counselor, testified for the State. She testified that she had a conversation with the prosecuting witness approximately two weeks after the alleged rape and in that conversation the prosecuting witness told Mrs. Bryan: "(1) she had been sexually assaulted on August 30, 1969; (2) similar assaults had taken place frequently over a two-year period prior to that date; and (3) all such assaults took place in the victim's home."

The defendant appealed and assigned the admission of Mrs. Bryan's testimony was error. The Court of Appeals, in an opinion by Chief Judge Schwab, reversed the conviction and said at page 140:

"3.    There is another exception applicable to prosecutions for sexual offenses that was recognized early in Oregon jurisprudence. *State v. Sargent,* 32 Or 110, 59 P 889 (1879). It provides that a person to whom a complaint of sexual misconduct is made by the prosecuting witness can testify that a complaint was made, but cannot testify as to the details of the complaint. This rule has been consistently followed in Oregon, and apparently has also been adopted in a majority of other jurisdictions. *See,* CJS 512, Rape § 53. Thus, the exact question presented is whether Mrs. Bryan, in testifying as to the substance of the complaint that the prosecuting witness made to her, exceeded the scope of the limited hearsay exception that has been recognized in cases of this type.

"4.    There is little guidance in the cases to determine exactly what constitutes permissible testimony that a complaint was made as distinguished from impermissible testimony as to the details of the complaint, other than the clearly established rule that the witness cannot state the identity of

the alleged assailant. *See e.g., State v. Whitman,* 72 Or 415, 143 P 1121 (1914). However, after reviewing the prior Oregon cases on this subject, we recently stated:

"* * * Hearsay evidence is permissible for the limited purpose of establishing that a complaint was made *but nothing more.* [Citations omitted.] (Emphasis supplied.) *State v. Emery, supra,* 4 Or App at 530, n.1.

"Under the but-nothing-more standards stated in *Emery,* we conclude that Mrs. Bryan's hearsay testimony as to the location of the assaults and as to the prior assaults over a two-year period was beyond the scope of the exception here discussed." (Footnotes omitted.)

The other chief source OEC 803(18a) is the following quote in the official commentary from McCormick on Evidence.[1]

" 'In rape cases, and increasingly in cases of sex offenses generally, evidence is admissible that the victim made a complaint. The only time requirement made is that the complaint have been made without a delay which is unexplained or is inconsistent with the occurrence of the offense, in general a much less demanding time aspect than with the typical excited utterance situation. In its origin, the theory of admissibility was to repel any inference that because the victim did not complain no outrage had in fact transpired. Accordingly, if the victim did not testify, evidence of complaint was not admissible. McCormick section 297 at 709.' " (Footnotes omitted.)

The legislative comment after recognizing the holding in *State v. Waites, supra,* and the trend in other jurisdictions with the above quote from McCormick on Evidence, states:

"The Oregon rule *provides that a person to whom a complaint of sexual misconduct is made by the prosecuting witness can testify that a complaint was made, but cannot testify to the details of the complaint.*" (Emphasis added.)

The underlined language in the above quote is taken from *State v. Waites, supra,* word for word. 7 Or App at 140.

There is no question but that the legislature zeroed in

---

[1]Although the legislative comment does not say so, the quote is from the Second Edition (1972). The Third Edition of McCormick on Evidence (1984) contains the same quoted language word for word.

on *State v. Waites, supra,* as expressing the law of the State of Oregon. The legislature was not concerned with whether the case was by Oregon's highest court. It was looking for a clear and workable expression of the rule. It found it in *State v. Waites, supra,* and the majority has ignored the case. The lawmakers considered the case in the same fashion as they treated *Dallas County Commercial Union Assurance Co. Ltd.,* 286 F 2d 388 (5th Cir 1961) (under rule 803(24)) when they rejected one of our Supreme Court cases, *Timber Access Industries Co. v. U.S. Plywood-Champion Paper, Inc.,* 263 Or 509, 503 P2d 482 (1972). This time around the legislature looked to the Oregon Court of Appeals instead of the 5th Circuit.

Immediately after announcing the Oregon rule the legislative comment cites the following ten cases to support it:

> "* * * *State v. Waites, supra,* 7 Or App at 140; *State of Oregon v. Tom,* 8 Or 177 (1879); *State v. Sargent,* 32 Or 110, 49 P 889 (1897); *State v. Ogden,* 39 Or 195, 65 P 449 (1901); *State v. Whitman,* 72 Or 415, 143 P 1121 (1914); *State v. Matson,* 120 Or 666, 253 P 427 (1927); *State v. Haworth,* 143 Or 495, 21 P2d [1091 (1933); *State v. Yielding,* 238 Or 419, 395 P2d] 172 (1964); *State v. Emery,* 4 Or App 527 at 530 n 1. 480 P2d 445 (1971); *State v. Wilson,* 20 Or App 553, 532 P2d 825 (1975)."

In addition to the above cases, the lead case of *State v. Waites, supra,* cites *State v. Birchard,* 35 Or 484, 59 P 468 (1899), to support the rule.

An examination will show that all eleven cases have many things in common. In each case the victim testified in the trial court. The ages of the victims ran from the 5 year-old girl in *State v. Tom, supra,* to the adult woman in *State v. Matson, supra.* The cases give two reasons for what the legislative comment now calls the "Oregon Rule": (1) to bolster or corroborate the credibility of the prosecuting witnesses of all ages that the event did happen, and (2) to negate the inference of consent in the cases of adult prosecuting witnesses.

Basic to the entire concept underlying the Oregon rule is the requirement that the victim of the sexual misconduct testify at the trial. It makes no difference what label is put on the person who makes the personal sexual complaint as long as that person testifies. This is demonstrated by the

above quote from McCormick on Evidence which refers to that person as a "victim" who testifies and *State v. Waites, supra,* which uses the term "prosecuting witnesses." If the person who has suffered the sexual misconduct does not testify, then the reason for the rule has evaporated. In that event, there is no testimony which needs to be corroborated as to the fact that the event occurred or negated as to the inferred consent of adult victims.

It seems evident that a female person who suffers from an act of sexual misconduct, who instigates the prosecution and testifies at the trial is a victim, a prosecutrix, and a prosecuting witness. A person who does not testify can be both a victim and a prosecutrix. However, a person who neither testifies nor instigates the prosecution is only a victim. It would seem that for the above reasons the legislature adopted the term "prosecuting witness" along with the balance of the rule from *State v. Waites, supra.* A prosecuting witness is a person who testifies at a trial.

There is no Oregon case which defines "prosecuting witness,"[2] but Black's Law Dictionary, Fourth Edition (1951) at page 1385 defines the term:

> "The private person upon whose complaint or information a criminal accusation is founded and whose testimony is mainly relied on to secure a conviction at the trial; in a more particular sense, the person who was chiefly injured, in person or property, by the act constituting the alleged crime, (as in cases of robbery, assault, criminal negligence, bastardy, and the like), and who instigates the prosecution and gives evidence."

In this case, none of the mother's testimony as to what the daughter told her is admissible as an exception to the hearsay rule under OEC 803(18a) because the daughter did not testify at the trial. The daughter was not a prosecuting witness. The rule does not apply.

---

[2]It is not surprising that the same law dictionary defines a "prosecutrix" as "A female prosecutor."

"Prosecutor" as used in the context of this case is defined:

"One who instigates the prosecution upon which an accused is arrested or who prefers an accusation against the party whom he suspects to be guilty." Black's Law Dictionary, Fourth Edition (1952) page 1385.

Not even the State contends that OEC 803(18a) applies to this case. In a brief in this court the State said:

"When a child does not testify, the sexual complaint in exception is inapplicable and the statement must be excluded unless some other basis of admission is identified." (Respondent's Memorandum of Law at page 10, filed March 5, 1985.)

The official legislative comment ends with the following: "The Legislative Assembly intends to retain in full the present Oregon law relating to this exception." How could the legislature have said it plainer? It is obvious that they adopted the "Oregon Rule" as set out in *State v. Waites, supra.*

What is this case about? It is about what the law is, not what the law should be. We are called upon to interpret a simple and unambiguous statute. It was enacted in 1981 and is accompanied by a clear official legislative comment. We are not called upon to tinker with some judge-made ancient rule that has no legislative history.

Two parts of the majority opinion are inaccurate:

(1) It states: "The preamble to OEC 803 and the test of 803(18a) appear to be in conflict. The preamble says the availability of the declarant is immaterial, yet the rule refers to a prosecuting witness." (299 Or at 641)

The preamble is not a part of the law of the State of Oregon. The Oregon Evidence Code was passed by the 1981 legislature as chapter 892. Section 100 of that chapter provides:

"The article and section headings or captions included in this Act are used only for captions included in this Act are used only for convenience in locating or explaining provisions of this Act and are not intended to be a part of the statutory law of the State of Oregon."

Without the preamble, OEC 803 reads: "The following are not excluded by Rule 802, even though the declarant is available as a witness:" This is not necessarily inconsistent with (18a). It appears to be a neutral type of statement that neither adds or detracts from (18a). If they should be found to be inconsistent then (18a) controls. ORS 174.020 provides:

"In the construction of a statute the intention of the legislature is to be pursued if possible; and when a general and

particular provision are inconsistent, the later is paramount to the former. So a particular intent shall control a general one that is inconsistent with it."

(2) The majority opinion at page 644, states that in *State v. Haworth,* 143 Or at 496: "* * * the court allowed in evidence the complaint of 'an act of intercourse [which] occurred at the defendant's home on a night in May, 1931.' "

There are some interesting things about *State v. Haworth* which at page 496 states:

"The first assignment of error is based upon the admission of testimony of the mother of the *prosecuting witness.* [A 10-year-old girl who testified at the trial]. This witness was called by the State. She testified without objection that she was the mother of Eleanor, the *prosecuting witness;* that Eleanor complained to her of an act of intercourse with defendant and that it occurred at the defendant's home on a night in May, 1931." (Emphasis supplied.)

The testimony that the majority quotes was admitted without objection, but later the mother was allowed to testify over objection that Eleanor told her the act occurred "two or three weeks before school was out."

The *Haworth* case is confusing.[3] It goes on to say: "No motion was made to strike the answer. It will be observed that the witness did not mention the name of the defendant

[3]The majority refers to *State v. Haworth,* 143 Or 495 21 P2d 1091 (1933), as the "last word from the Oregon Supreme Court on the 'complaint of sexual misconduct' exception to the hearsay rule * * *." Even so, it is very obvious that the Oregon legislature focused its attention on a 1971 case from the Court of Appeals, *State v. Waites,* 7 Or App 137, 470 P2d 188 (1971), instead of a 1933 case from the Oregon Supreme Court.

Although I would not reach the problem in this case, there is a potential conflict between *State v. Haworth* and *State v. Waites* which is demonstrated by the majority opinion. *State v. Haworth,* 143 Or at 497 states:

"In applying this rule it has been held that while the witness should not be permitted to tell the particulars of the complaint, still enough may be given in evidence to show the nature of the complaint, even though it involves to some extent the particulars thereof, * * *." 22 R.C.L. 1214.

On the other hand, *State v. Waites,* 7 Or App at 141, quotes with approval from *State v. Emery,* 4 Or App 527, 530 n 1, 480 P2d 445 (1971): "* * * Hearsay evidence is permissible for the limited purpose of establishing that a complaint was made but nothing more." This dissent suggests that the above quoted portion of *State v. Haworth, supra,* is dicta and that the legislative comment to OEC 803(18a) in effect approved the statement from *State v. Emery, supra.*

nor any particulars of the act." 143 Or at 497. The conviction was affirmed.

My chief complaint about the majority opinion is the expansion of the definition of the term "prosecuting witness" to include the victim of sexual conduct who does not testify.

At page 641 of the majority opinion the majority states that producing the "child in court for the trial judge to conduct a competency hearing" will satisfy the "prosecuting witness" requirement of OEC 803(18a) whether the child eventually testifies or not. The majority continues on page 641 with the proposition that the "language 'prosecuting witness' is an outgrowth of early rape and sexual assault cases which referred to the victim of the sexual assault as the 'prosecutrix.'" On page 644, the majority states: "We conclude from the cases above that early court decision referred to the victims of sexual assault as either the 'prosecuting witness' or the 'prosecutrix' irrespective of age.

The above statements by the majority are not red herrings, they are purple sardines. They contain nothing that supports the result reached by the majority. There is no basis in law or fact to expand the well recognized definition of prosecuting witness to include a victim of sexual conduct who does not appear and testify as a witness. The Oregon rule is based word for word on the case of *State v. Waites, supra,* in which the 14 year-old girl victim testified and was referred to as a witness. If the Oregon Legislature had wanted to expand the definition of "prosecuting witness" it would have said so in the official legislative comment.

If the legislature determines that our present evidence code is inadequate to deal with problems presented by sexual assaults committed against victims who are too young to testify at trial, it may wish to consider a new hearsay exception to deal with the problem consistent with the defendant's right of confrontation. This should be done by the legislature rather than torture and twist a present exception to serve a result for which it was not intended. Skoler, *New Hearsay Exceptions for Child's Statement of Sexual Abuse.* 18 J. Mar. L. Rev. 1 (1984); Comment 3 Colum. L. Rev 1745 (1983). Maybe the states of Kansas and Washington are on the right track. *State v. Myatt,* 237 Kan 17, 697 P2d 836 (1985); *State v. Ryan,* 103 Wn2d 165, 691 P2d 197 (1984). The

legislature might investigate and see if ORS 13.425(1) which requires the confession of a defendant to be corroborated is still necessary as a part of the Oregon law. In *State v. Lerch,* 296 Or 377, 397, 677 P2d 678 (1984), we commented that apparently not all states require the corroboration of a confession.

It is my understanding that OEC 803(24) limits the authority of trial courts to admitting hearsay to very rare and exceptional cases like *Dallas County v. Commercial Union Assurance Co., supra,* where the particular circumstances of the declarant and the out-of-court statement are demonstrably trustworthy. This case does not fit within the exception. It should also be noted that the legislature in its comment to OEC 803(24) specifically stated that it did not want the courts by themselves to create new "classes" of exceptions.

I would reverse the defendant's conviction.

Justice Lent and Justice Linde join in this dissent.

### APPENDIX A

"*Subsection (18a)* Although the Federal Rules of Evidence do not mention this exception, the Legislative Assembly exempted a complaint of sexual misconduct from the hearsay rule. This subsection recognizes the holding in *State v. Waites,* 7 Or App 137, 470 P2d 188 (1971), and the trend in all other jurisdictions:

> " 'In rape cases, and increasingly in cases of sex offenses generally, evidence is admissible that the victim made complaint. The only time requirement is that the complaint have been made without a delay which is unexplained or inconsistent with the occurrence of the offense—in general, a much less demanding time aspect than with the typical excited utterance situation. In its origin, the theory of admissibility was to repel any inference that because the victim did not complain, no outrage in fact transpired. Accordingly, if the victim did not testify, evidence of complaint was not admissible * * *' McCormick section 297 at 709."

"The Oregon rule provides that a person to whom a complaint of sexual misconduct is made by the prosecuting witness can testify that a complaint was made, but cannot testify as to the details of the complaint. *State v. Waites, supra,* 7 Or App at 140; *State of Oregon v. Tom,* 8 Or 177 (1879); *State v. Sargent,* 32 Or 110, 49 P 889 (1897); *State v.*

*Ogden,* 39 Or 195, 65 P 449 (1901); *State v. Whitman,* 72 Or 415, 143 P 1121 (1914); *State v. Matson,* 120 Or 666, 253 P 527 (1927); *State v. Haworth,* 143 Or 495, 21 P2d [1091 (1933); *State v. Yielding,* 238 Or 419, 395 P2d] 172 (1964); *State v. Emery,* 4 Or App 527 at 530 n 1, 480 P2d 445 (1971; *State v. Wilson,* 20 Or App 553, 532 P2d 825 (1975). Accordingly it has been held that testimony as to prior assaults and as to the location of the assault in question, *State v. Waites, supra,* and testimony as to the identity of the assailant, *State v. Wilson, supra,* is beyond the scope of the exception and inadmissible.'

"The Legislative Assembly intends to retain in full the present Oregon law relating to this exception.